UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LA SHEUNE CANTEY,

                Plaintiff,

-against-

MOUNT VERNON CITY SCHOOL DISTRICT,
ILENE BICHLER, GUS MOUNTANOUS,
DENISE GAGNE-KURPIEWSKI, JACKIELYN
MANNING-CAMPBELL, JAMAL DOGGETT.

                Defendants.

16-CV-2669 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff, La Sheune Cantey ("Plaintiff"), proceeding *pro se*, commenced this Civil Rights action against the Mount Vernon City School District (the "District"), Ilene Bichler, Gus Mountanous, Denise Gagne-Kurpiewski, Jackielyn Manning-Campbell, and Jamal Doggett (collectively, "Defendants"), claiming that she had been discriminated against because of her race and religious beliefs throughout the course of her employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (*See* Plaintiff's Amended Complaint ("Am. Compl.") (ECF No. 11.).) Before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Defendants' Motion"), arguing, *inter alia*,[1] that Plaintiff fails to state a cause of action because her claims are barred by operation of an executed Settlement Agreement and General Release (the "Settlement

---

[1] Defendants also contend that Plaintiff cannot bring forth the present claims because (1) Plaintiff has failed to exhaust her administrative remedies; (2) certain Title VII claims are time-barred; (3) Plaintiff has failed to plead sufficient facts to establish claims for a hostile work environment; (4) Plaintiff has failed to plead sufficient facts to support a plausible inference of discrimination; and (5) Plaintiff has failed to state a claim for retaliation. (*See generally* Brief in Support of Defendants' Motion ("Defs. Br."), (ECF No. 44).). In light of this Court's decision to convert this motion into one for summary judgment and to find that the Settlement Agreement bars this lawsuit, it need not consider the remainder of Defendants' arguments.

1

Agreement"). Defendants also argue that this Court should convert the Motion into one for summary judgment and enter judgment in their favor on the issue of the operation of the Settlement Agreement. For the following reasons, Defendants' Motion to dismiss is converted into one for summary judgment and is GRANTED.

## FACTUAL BACKGROUND

Plaintiff is an African American woman and practicing Jehovah's Witness. (*See* Amended Compl. ("Am. Compl.") at 2.)[2] She was employed by the District for over 10 years, six of which she served as a Library Media Specialist.[3] (*Id.* at 10.) Plaintiff alleges that between 2010 and 2016, she was harassed by various District employees, denied time off and particular placement requests, transferred to different schools within the District without adequate notice, subjected to false allegations, excessive punishments, and defamatory remarks regarding her race and religion, and ultimately forced to resign. (*Id.* at 3-12, 15.)[4]

### I. The Settlement Agreement

During her employment, the District asserted certain disciplinary charges against Plaintiff pursuant to Section 3020-a of the Education Law of the State of New York (the "Charges")[5]. (*See* Declaration of Jennifer A. Robinson in Support of Defendants' Motion ("Robinson Decl.") (ECF No. 43), Ex. B.) In resolution of those charges, on May 3, 2016, the parties entered into the Settlement Agreement, which called for Plaintiff's resignation from her position as a Library Media Specialist and settled and released any claims Plaintiff had against the Defendants. (*Id.*)

---

[2] As Plaintiff is proceeding *pro se* and her Amended Complaint is not organized by paragraphs, all citations thereto will be to page numbers.
[3] It is unclear based on Plaintiff's Amended Complaint whether she held other positions throughout the course of her employment with the District.
[4] As the operation of the Settlement Agreement is critical to the outcome of this Motion, the Court need not delve further into the factual background of the alleged unlawful conduct asserted in Plaintiff's Amended Complaint.
[5] The Court does not know the nature of the charges, as no specifics have been provided; but such specifics are not necessary for deciding this Motion. Moreover, it appears the Settlement Agreement keeps that information confidential insofar as it expunges anything negative on her personal record. (Robinson Decl. Ex. C. ¶ 17.)

By signing the Agreement, Plaintiff specifically "release[d] and forever discharge[d] the Mount Vernon City School District of and from all [claims] including, but not limited to, any claims in law, equity, contract, tort or those claims which were or could have been alleged up until the date of execution of the Agreement." (Robinson Decl., Ex. B. ¶ 11.) Moreover, Plaintiff explicitly waived her rights to file a Title VII action, "[Plaintiff] agree[d] that she knowingly and voluntarily waive[d] all rights she ha[d] or may have" to commence an action "against Releasees . . . including but not limited to claims brought under . . . Title VII of the Civil Rights Act of 1964." (*Id.*)

Plaintiff was provided twenty-one days to consider the provisions of the Settlement Agreement, and an additional seven days to revoke her acceptance after she agreed to the terms and executed the Settlement Agreement. (*Id.* ¶ 12(e)-(f).) She also "acknowledge[d] that no representation, statement, promise, inducement, threat or suggestion ha[d] been made by Releasees and/or attorneys for Releasees, to influence her to sign th[e] Agreement," and that she "ha[d] fully discussed the terms of th[e] Agreement with legal counsel/and or union representation of her own choosing." (*Id.* ¶¶ 13-14.) In exchange for her resignation and release of all claims, Plaintiff would receive her regular salary ($119,261.00), as well as a sum owed to her for time between February and April of 2016 when she was taken off the payroll ($4,969.21),[6] and continued fringe benefits up until June 30, 2016. (*Id.* ¶ 4.) The District also agreed to "withdraw all charges pending against [Plaintiff], with prejudice" (*Id.* ¶ 3.), and pay her an additional lump sum of $15,000. (*Id.* ¶ 4.)

---

[6] The total amount of income that accrued during the February through April 2016 period when Plaintiff was taken off of payroll was $19,876.84. (*See* Robinson Decl., Ex. B. ¶4.) Prior to execution of the Settlement Agreement, however, $14,907.63 had already been remitted to Plaintiff, leaving $4,969.21 as the only outstanding income due to Plaintiff from this period. (*Id.*)

3

## II. The May 3, 2016 Hearing

Prior to the execution of the Settlement Agreement, the parties engaged in a Pre-Hearing Conference (the "Hearing") concerning the Charges. (*See generally* Robinson Decl., Ex. C.) During the Hearing, Officer Robert Grey asked Plaintiff the so-called "Abramowitz" questions to confirm that she understood her rights with respect to the Charges lodged against her and her decision to enter into the Settlement Agreement. (*Id.* at 8-11.) Most notably, Officer Grey asked Plaintiff if her "attorney explained all of the provisions of the stipulation," if she was "aware of her right to refuse to settle this case," and finally, whether she "freely waive[d] [her] right to a hearing in this matter and . . . enter[ed] into this Stipulation of Settlement of [her] own free will without any coercion or without any duress." (*Id.* at 9-11.) Plaintiff answered affirmatively to each of these questions and subsequently signed the Settlement Agreement. (*Id.*)

## LEGAL STANDARD

### I. Rule 12(b)(6) Motion to Dismiss and Rule 12(d)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, [that] 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

*Pro se* complaints are afforded great solicitude and leniency; the Court must interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Plaintiffs proceeding *pro se*, however, are not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

In deciding a motion to dismiss "the Court must limit its analysis to the four corners of the complaint." *Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991). This Circuit has held, however, that documents attached to the complaint as exhibits or incorporated by reference may also be considered. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Additionally, "the Court may consider matters of which judicial notice may be taken." *Brass v. Am. Film Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Under Rule 12(d) of the Federal Rules of Civil Procedure, where additional materials not falling into the above-referenced categories are submitted to the Court on a 12(b)(6) motion, the Court must either exclude the additional materials or convert the motion to one for summary judgment, provided "sufficient notice to an opposing party and an opportunity . . . to respond," have been afforded. *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995). For a *pro se* litigant, "'[n]otice is particularly important' because the *pro se* litigant 'may be unaware of the consequences of his failure to offer evidence bearing on triable issues.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir 1983)). Thus, "[t]he essential inquiry is whether the [*pro se* party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the

pleadings." *Groden*, 61 F.3d at 1052 (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir. 1985).

## II. Rule 56 Summary Judgment Motion

Rule 56 of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not simply "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

On summary judgment, the Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). Thus, in reviewing the record, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences

6

in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

## DISCUSSION

### I. Documents to Consider

In support of the argument that Plaintiff is barred from bringing suit, Defendants attach the May, 3, 2016 Settlement Agreement and a transcript from Plaintiff's May 3, 2016 Hearing (the "Hearing Transcript"). A threshold issue this Court must decide is whether to consider these documents and convert this to a motion for summary judgment; it will.

This Court cannot properly consider these documents within the confines of a 12(b)(6) motion. The documents are not attached to the Amended Complaint and are only vaguely referenced therein, insofar as Plaintiff states that "documents [were] signed under duress." (*See* Am. Compl. at 9.) Additionally, the Court may not take judicial notice of the Settlement Agreement because it was handled privately between the parties and not made accessible to the public. *See Roberts v. Doe*, No. 14-CV-9174(AJP), 2015 WL 670180, at *2 (S.D.N.Y. Feb. 17, 2015) ("Because the City's policy is to no longer publicly file settlement documents like the . . . General Release, th[at] document [ ] [is] not susceptible to judicial notice."). This Court, thus may only consider the Settlement Agreement if conversion to a summary judgment motion is proper.

Sufficient cause exists to convert Defendants' Motion to one for summary judgment. The Second Circuit requires that "absent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56... he or she must be so informed by the movant in the notice of motion, or, failing that, by the district court." *McPherson v. Coombe*, 174 F.3d 276, 282 (2d Cir. 1999). Accordingly, Defendants' filing of their moving papers together with notice to a *pro se* litigant pursuant to Local Civil Rule 12.1 has regularly been considered sufficient notice for

7

purposes of Rule 12(d). *See Hernandez*, 582 F.3d at 308 n. 2 (citing cases where notice to *pro se* litigants pursuant to Local Rule 12.1 was sufficient for conversion of motion to dismiss to one for summary judgment); *see also Redman v. N.Y. State Dep't of Corr. Servs.*, 541 F. App'x 52, 53 (2d Cir. 2013) (summary order); *Neeseman v. Mt. Sinai W.*, No. 17-CV-1766(LGS), 2018 WL 626358, at *5 (S.D.N.Y. Jan. 30, 2018). Further, since the Defendants have included the Settlement Agreement in their motion papers and have relied on it heavily, Plaintiff would not be "taken by surprise" by such a conversion. *In re G. & A. Books, Inc.*, 770 F.2d at 295. The Court hereby converts this motion into one for summary judgment and will now consider the issue on the merits.

## II. <u>Waiver of Suit</u>

Defendants substantively contend that Plaintiff's suit is barred by operation of the May 3, 2016 Settlement Agreement. (*See* Defs. Br. at 3.) In opposition, Plaintiff essentially argues that the Settlement Agreement is void because she signed it under duress and did not sign it knowingly and voluntarily. Preliminarily, a review of the Settlement Agreement reveals that, assuming it is indeed valid, by its terms it does explicitly bar the current lawsuit, as Plaintiff waived her right to initiate any Title VII action, (*see* Robinson Decl., Ex. B. ¶ 11), and any other lawsuit arising from her relationship with the District (*id.* ¶ 8.) This Court must now determine whether the Settlement Agreement is valid.

### A. The Validity of the Agreement

Construing Plaintiff's opposition liberally, there are two grounds on which she argues that the Settlement Agreement did not constitute a valid waiver of her Title VII claims against Defendants: (1) the document was signed under duress; and (2) her waiver was not made knowingly and voluntarily. (*See* Plaintiff's Brief in Opposition to Defendants' Motion ("Plf. Br.") (ECF No. 35), at 1, 4-5.) Plaintiff's argument both fail. Her claim of duress is unavailing because she does not plead facts sufficient to support such a finding. Moreover, a balancing of the factors

8

articulated in *Bormann v. AT&T Communications, Inc.*, demonstrates that Plaintiff's waiver of Title VII claims was both knowing and voluntary; the Settlement Agreement is enforceable. 875 F.2d 399, 403 (2d Cir. 1989).

1. Duress

Plaintiff's claim that she signed the Agreement under duress lacks merit. "To prove [ ] duress, a party seeking to void a contract must plausibly plead that the release in question was procured by (1) 'a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.'" *Kramer v. Vendome Group LLC*, No. 11-CV-5245(RJS), 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012) (quoting *Bachiller v. Turn On Products, Inc.*, No. 00-CV-8701(JSM) 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003)). Additionally, "the duress at issue must have originated from the defendant." *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012). "A mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011). Moreover, a "person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001).

Plaintiff contends she was not in a sound mental state at the time she signed the Settlement Agreement and claims that "the MVCSD knowingly took advantage of [this] mental state." (Plf. Br. at 5.) She also alleges that her attorney did not appropriately represent her views, insofar as she claims that she "couldn't convince him that the charges were false nor that [she] did not agree with the terms," (*id.* at 1, 5), and that he "seemed pressured to return home," (*id.* at 5.) Plaintiff does not claim that she was physically compelled or threatened to sign the document. Instead her

9

statements, construed loosely, allege duress by undue influence of her attorney. Fatal to this claim, however, is that the undue influence complained of here is apparently on the part of a third party, not Defendants. *See Mandavia*, 912 F. Supp. 2d at 127.

Additionally, while the Court is sympathetic to Plaintiff's personal tribulations existing at the time of the execution of the Settlement Agreement, her claim of duress on this ground likewise fails as it has nothing to do with Defendants' conduct, (*id.*), and even coupled with improper pressure by her attorney, is simply insufficient to demonstrate duress, *see McIntosh v. Consolidated Edison Co.*, No. 96-CV-3624(HB), 1999 WL 151102, at *5 (S.D.N.Y. Mar. 19, 1999) (facts insufficient to support finding of duress where plaintiff felt pressure from his attorney to sign document and had fragile mental state), *aff'd*, 216 F.3d 1072 (2d Cir. 2000).

Plaintiff's duress claim is further discredited by her Hearing testimony. (*See generally* Robinson Decl., Ex. C.) During the Hearing, Plaintiff was asked a series of questions to ensure that she was prepared to enter into the Settlement Agreement. (*Id.*) Specifically, she was asked whether she understood that she had "a right to refuse to settle this case" and proceed with a § 3020-a hearing on the merits of the charges. (*Id.* at 9.) Plaintiff responded "Yes." (*Id.*) Officer Grey also explicitly asked if she waived her right to a hearing and decided to enter into the Settlement Agreement "of [her] own free will without any coercion or without any duress?" (*Id.*) Plaintiff again responded in the affirmative. (*Id.*) The Hearing record therefore dismantles Plaintiff's argument by demonstrating that Plaintiff was not threatened into signing the Settlement Agreement and was aware of alternative remedial measures available to her. *See Bekhor v. Josephthal Group*, No. 96-CV-4156(LMM), 2000 WL 1521198, at *3 (S.D.N.Y. Oct. 13, 2000) (plaintiff's duress claim failed where he had the option to refuse to settle and pursue his legal claims.) For example, Plaintiff could have chosen to proceed with defending herself against the charges brought by the

District instead of accepting the $15,000 and releasing Defendants from future lawsuit. (*Id.* at 9-10.) Further, even assuming, *arguendo,* that Plaintiff had signed the Settlement Agreement under duress, she had an additional seven days to revoke the Settlement Agreement before it was finalized, (*see* Robinson Decl., Ex. B. ¶ 12(f)), but failed to seek redress or otherwise contest the validity of the Settlement Agreement at that time, or any time shortly thereafter, foreclosing her current claim of duress, *VKK Corp.*, 244 F.3d at 122 (noting that plaintiffs must repudiate a contract signed under duress "promptly" or waive the argument).

2. Knowing and Voluntary Waiver

Plaintiff's argument that the Settlement Agreement was not signed knowingly and voluntarily likewise fails. A plaintiff may validly waive her claims for discrimination under Title VII if such a waiver is both knowing and voluntary. *Bormann*, 875 F.2d at 403. To assess whether waiver was knowing and voluntary, courts consider the following eight factors:

> (1) The plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney; (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law; [7] whether [the] employer encourage[d] or discourage[d] [the] employee to consult an attorney; and [8] whether the employee had a fair opportunity to do so.

*Id.* These factors are "neither exhaustive nor must all of the factors be satisfied before a release is enforceable." *Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 360 (S.D.N.Y. 1999). Instead, the Court looks at the totality of circumstances to determine whether the individual's waiver of his right can be characterized as "knowing and voluntary." *Lanoik v. Advisory Comm. Of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1368 (2d. Cir. 1991). A review of the factors leads this Court to conclude that Plaintiff's waiver was knowing and voluntary.

Plaintiff's argument that she was unable to understand the Settlement Agreement because she "lacked any experience and expertise in the area of employment contracts and has never attended law school,"[7] (Plf. Br. at 4), is unconvincing. A legal background is not a necessary prerequisite for understanding an agreement. *See Nicholas v. NYNEX, Inc.*, 929 F. Supp. 727, 731 (S.D.N.Y. 1996). While she has not specified her highest level of education, the length of her employment by the District highly suggests that she exceeds what is required to satisfy the first *Bormann* factor, particularly because even plaintiffs with minimal education and work experience have been found capable of understanding an agreement. *See Prunella v. Carlshire Tenants, Inc.*, 94 F. Supp. 2d 512, 516 (S.D.N.Y. 2000) (a building superintendent employed for three years "capable of understanding the text and ramifications of the stipulation he signed"); *Bachiller*, 2003 WL 1878416, at *4; (plaintiff with "High School Equivalency Diploma" who "was terminated [as] accounts payable clerk" capable of understanding agreement), *aff'd*, 86 F. App'x 465 (2d Cir. 2004).

Plaintiff merely claims that she was not "given sufficient time with the Agreement", (*see* Plf. Br. at 4), but fails to include facts indicating what amount of time, if any, she had with the document. Additionally, the evidence appears to demonstrate the converse. Plaintiff had sufficient time to review the Agreement before signing it. By signing the Agreement, Plaintiff "acknowledge[d] that Releasees have afforded her the opportunity to consider the terms of this Agreement for a period of twenty-one (21) days," (*see* Robinson Decl., Ex. B. ¶ 12(e)), and has made no allegations to rebut the validity of this provision. Plaintiff was also given an additional seven days to revoke the Agreement after its execution. (*Id.* ¶ 12(f).) Courts have held that this is

---

[7] Though it is not referenced in Plaintiff's Amended Complaint, the Court also assumes that Plaintiff has a college education (as it is likely a prerequisite for her occupation), which further weighs this *Bormann* factor in favor of Defendants.

adequate time to reconsider the terms of an Agreement. *See Kramer,* 2012 WL 4841310, at *3 (finding four days "sufficient time for a plaintiff to acquaint herself with a release's terms and make a considered decision"). These facts decidedly weigh in favor of enforcing the Agreement.

Plaintiff also alleges that she did not have an opportunity to negotiate the terms of the contract, (*see* Plf. Br. at 4); such a claim, however, is conclusory and devoid of fact, and even if this Court considered this factor to weigh in Plaintiff's favor, it alone is not determinative. *See Bormann*, 875 F.2d at 403.

Additionally, the provisions of the Settlement Agreement were clear and unambiguous. Paragraph 11 plainly states that, upon signing the Settlement Agreement, Plaintiff "releases and forever discharges . . . the Mount Vernon City School District . . . of and from all [claims] . . . which were or could have been alleged up until the date of execution of this Agreement." (Robinson Decl., Ex. B, ¶ 11.) "Courts have consistently found such language to unambiguously bar plaintiffs from later bringing any claims, including of discrimination, against former employers." *Smith v. JPMorgan Chase*, No. 15-CV-808(PAE), 2016 WL 5339548, at *6 (Sept. 23, 2016) (collecting cases). Where a release "is written in plain English," a plaintiff cannot "avoid its consequences by claiming that she did not understand its terms." *Laramee*, 72 F. Supp. 2d at 361. This factor weighs in Defendants' favor.

The remaining factors also favor a finding that the Settlement Agreement was validly executed. Where plaintiffs are assisted by counsel, there is a strong interest in upholding "the validity of release agreements." *Mandavia*, 912 F. Supp. 2d at 131. Under oath, Plaintiff acknowledged that she consulted her attorney in evaluating the Agreement at the Hearing by explicitly affirming that her attorney had "explained all of the provisions of the [agreement]" to

her. (*See* Robinson Decl., Ex. C, at 9.) Accordingly, Plaintiff had an opportunity to consult an attorney and did so before she signed the Agreement.

Moreover, the additional severance Plaintiff received "exceeds employee benefits to which [Plaintiff] was already entitled by contract or law." *Bormann*, 875 F.2d at 403. Plaintiff contends that the $15,000 she received was "what [she] would receive for the summer months anyway." (Plf. Br. at 4) This argument is of no moment. Plaintiff was not otherwise entitled to the additional $15,000 she received over and above the dismissal of the charges against her which was given in exchange for her waiver of the right to bring future suit against the District. (*See* Robinson Decl., Ex. B. ¶ 8). To the extent Plaintiff alleges that she did not receive the full amount of severance she was entitled to under the Settlement Agreement, such an argument does not dissuade this Court from granting Defendants' Motion. This allegation bears no weight on the issue of the Settlement Agreement's validity; it only creates the possibility that Plaintiff may be able to assert a separate lawsuit for breach of contract.

While Plaintiff may not have had a role in deciding the terms of the Settlement Agreement, the remaining *Bormann* factors weigh heavily in favor of Defendants, supporting the conclusion that the Settlement Agreement was executed by Plaintiff both knowingly and voluntarily and is therefore enforceable. Consequently, the Settlement Agreement bars this lawsuit, as it contains Plaintiff's explicit waiver of the right to sue the District for claims regarding their relationship. Defendants' Motion is granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is converted into one for summary judgment and is GRANTED. Judgment is granted in Defendants' favor and Plaintiff's Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to mail a copy of this Opinion to Plaintiff at the address on the ECF docket and show proof of mailing. Furthermore, the Clerk of the Court is also respectfully directed to issue a judgment in favor of Defendants, terminate the motion at ECF No. 42, and terminate the action.

Dated: July 5, 2018
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge